## APPEAL OF THE DAILY NEWS PUBLISHING CO.

Docket No. 4158.   Submitted February 19, 1926.   Decided April 21, 1926.

> 1. During the calendar year 1918 the taxpayer and The Republican Co. were affiliated, within the meaning of section 240 of the Revenue Act of 1918.
>
> 2. In the absence of competent evidence to show that the Commissioner erred, (1) in increasing the taxpayer's income on account of Federal income and profits taxes determined by him to have been deducted from gross income for 1918, and (2) in not allowing an increased deduction on account of State income and franchise taxes alleged to have been paid during the year, his determination in that regard will not be disturbed.

*William W. Johnston, C. P. A.*, for the taxpayer.
*Percy S. Crewe, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the calendar year 1918 in the amount of $5,472.77. The taxpayer assigns as error (1) the refusal of the Commissioner to permit it and The Republican Co. to file a consolidated return; and (2) the increase by him of income through the disallowance of a deduction on account of income and franchise taxes alleged to have been paid to the Commonwealth of Massachusetts, and on account of Federal income and profits tax for the preceding year determined by the Commissioner to have been deducted from 1918 income.

### FINDINGS OF FACT.

The taxpayer is a Massachusetts corporation engaged in the publication of a daily evening newspaper at Springfield.

On February 28, 1924, while the taxpayer's protest to the Commissioner's proposal to assess additional income and profits taxes for the calendar year 1918 was pending, the Commissioner, believing that should assessment of the tax be withheld until final determination of the taxpayer's contention, assessment and collection of any tax which might be found to be due would be jeopardized by the delay, made an assessment of $7,273.72. He advised the taxpayer to file an abatement claim in accordance with the provisions of Regulations 62, article 1006. This claim was filed and on March 14, 1925, the Commissioner made a final determination allowing the claim in the amount of $1,800.95 and denying the same as to the amount of $5,472.77, of which amount approximately $3,000 is here in controversy.

The taxpayer was organized on November 9, 1888, by Charles J. Bellamy, Sr., who died a short time prior to 1915. Upon his death the business passed to his son and daughter, who became the owners of the entire capital stock of the corporation, the son, Charles J. Bellamy, Jr., being at that time about 20 years of age.

In May, 1915, Sherman H. Bowles, vice president of The Republican Co., a corporation engaged in the publication of a morning newspaper, and a close friend of the Bellamy family, opened negotiations with Charles J. Bellamy, Jr., and his sister on behalf of The Republican Co., with the view of acquiring the stock of The Daily News Publishing Co. The Republican Co. was actuated in its desire to acquire The Daily News Publishing Co. in order to compete with The Springfield Union, engaged in the publication of both morning and evening editions. These negotiations, which continued for some time, finally resulted in the purchase by The Republican Co., during that year, of 280 shares of the total outstanding 350 shares of The Daily News Publishing Co. for $160,000, the remaining 70 shares being retained by Charles J. Bellamy, Jr., for the reasons hereinafter set forth.

At the death of his father, who was the founder of The Daily News Publishing Co., the son was desirous of carrying on the business in the way in which his father had conducted it and of eventually becoming managing editor thereof. Upon deliberation, however, he reached the conclusion that it would not be wise for him to undertake to manage the affairs of the corporation, and that in order to realize his ambition to become an editorial writer he should surrender all interest in the management and operation of the paper. Having implicit confidence in his friends with The Republican Co., and upon being assured by them that he would be given a position with The Daily News in an editorial capacity, he concluded that it was to the best interest of himself and that company to become affiliated with The Republican Co. For reasons purely personal, however, he did not desire to part absolutely with his stock ownership in the company, and he agreed to accept the offer of The Republican Co. to purchase the stock of The Daily News Publishing Co. upon condition that he be permitted to retain 70 shares, or 20 per cent, of the total outstanding capital stock.

The desire of The Republican Co. was to secure complete ownership and control of The Daily News Publishing Co. Upon the assurance of Bellamy, however, that his wish to retain a stock interest in the business was not for the purpose of taking any part in the management or control of the affairs or policies of the company, but for the reason that he did not desire to part absolutely with the paper which his father had conducted for so many years, The Republican Co. agreed to purchase 280 shares, representing 80 per

cent of the capital stock, with the express understanding, however, that The Republican Co. was to be in complete control of the management of the affairs and policies of the newspaper and that the retention by Bellamy of 20 per cent of the stock would not result in his taking any action at any time adverse to the desires of The Republican Co.

Since 1915, The Republican Co, has been in complete control of The Daily News Publishing Co. and Bellamy has at no time caused his stock to be voted contrary to the wishes of The Republican Co., nor has he at any time asked for information relative to the affairs of the corporation. As he testified at the hearing, he promised The Republican Co. at the time he sold to it the stock of The Daily News Publishing Co. that his share of it should be controlled by the judgment of the officers of The Republican Co., and, further, that the voting rights of the stock held by him during the taxable years were, in fact, controlled by The Republican Co. from 1915 until it was acquired outright on April 1, 1923.

The physical properties of The Daily News Publishing Co. and The Republican Co. were merged in January, 1916, since which time the business of both papers has been carried on in the building owned by The Republican Co., and the editions of both papers have been published with equipment belonging to The Republican Co. Separate accounting systems were maintained for each company. However, the greater portion of cost of operation was charged to The Republican Co. and the charges made against The Daily News Publishing Co. were, to a great extent, arbitrary. The two companies were operated as a single business unit at all times after the date of acquisition of The Daily News Publishing Co. by The Republican Co. and only a meager attempt was made to determine the correct net income of either.

In computing the taxpayer's income for the year 1918, the Commissioner increased the same in the amount of $4,525.36, representing income and profits tax for 1917 determined by him to have been deducted in computing 1918 income, and, in addition, refused to allow an additional deduction of $400.38 for income and franchise taxes claimed to have been paid to the Commonwealth of Massachusetts. By reason of these and other adjustments which are not in controversy, the Commissioner increased the taxpayer's net income of $18,700.09, as reported, to $23,191.43, upon which he computed the deficiency here in controversy.

OPINION.

LITTLETON: It is the opinion of the Board that the evidence submitted fully supports the taxpayer's claim that during the year 1918

50144°—27——6

it was affiliated with The Republican Co., within the meaning of section 240 of the Revenue Act of 1918.

The principal officers of The Republican Co. testified that at the time that company acquired 80 per cent of the stock of The Daily News Publishing Co. it was understood between them and Charles J. Bellamy, Jr., that they should have complete control of the affairs and policies of the corporation and of the voting rights of the stock which he desired to retain on account of his father's long connection with The Daily News Publishing Co. Charles J. Bellamy, Jr., testified to the same effect, and stated that, at all times after the date of acquisition by The Republican Co. of 80 per cent of the stock, that company controlled the voting rights of the stock retained by him; that at the time of the sale he assured the officers of The Republican Co. that he would take no interest in the affairs of The Daily News Publishing Co. and that they should have complete control of the affairs and policies of the corporation, and that he would not, thereafter, vote his stock in opposition to their desires. This situation existed throughout the time that Bellamy was the owner of the stock. He was employed by The Daily News Publishing Co. in an editorial capacity, to which position he gave his exclusive time and attention, and took no interest in the business affairs of the corporation.

During the entire year 1918 up to December 15, 1918, Bellamy was in the military service of the United States and his stock during that time was not voted by anyone.

With respect to the second issue relative to the alleged erroneous increase by the Commissioner of 1918 income on account of Federal income and profits taxes determined by him to have been deducted by the taxpayer in computing its 1918 income, and his refusal to allow the taxpayer an additional deduction of $400.38 on account of Massachusetts taxes alleged to have accrued, or to have been paid, during the taxable year, the Board is unable to determine from the evidence whether or not the Commissioner erred in this regard. The taxpayer's counsel undertook to testify respecting these two items from information which he had obtained from others who were not present to testify and as to the contents of the books and records of the taxpayer which were not produced at the hearing. The Commissioner objected to the receipt of this testimony, upon the grounds that it was hearsay and that the books and records of The Daily News Publishing Co., which were not submitted, were the best evidence of the entries contained therein. After inquiry by the Division of the other witnesses present as to whether they had any knowledge of these matters, and upon being informed by them that they did not, the objection of the Commissioner to the testimony of taxpayer's counsel was sustained.

In matters of this character, statements made by persons who are not present to testify and to be subjected to cross examination, and statements as to what the books and records which are not produced for examination contain, can not be accepted by the Board for the purpose of making findings of fact and of reaching a correct conclusion with reference to items to which such statements relate.

It is not necessary to discuss taxpayer's claim that different comparatives under section 328 should be selected, since the evidence does not show that the net income of $23,191.43 for the taxable year was incorrect, and for the further reason·that the Board has held that the taxpayer and The Republican Co. were affiliated for the year 1918, which necessitates the recomputation of invested capital.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*