REPUBLIC BANK & TRUST COMPANY, Z. GOSSETT, BANKING COMMIS-
SIONER OF TEXAS, STATUTORY RECEIVER IN LIQUIDATION, PETI-
TIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76490.   Promulgated October 20, 1937.

*Charles F. Byers, Esq.,* for the petitioner.
*James H. Yeatman, Esq.,* for the respondent.

684

## OPINION.

HILL: The sole issue presented by the original pleadings is whether petitioner realized during the taxable year income in the amount of $20,000 upon unproven claims. However, at the first hearing at Houston, Texas, in May 1935, petitioner moved for leave to file an amended petition to raise the additional issue of the applicability of the Act of March 1, 1879, section 22, 12 U.S.C.A. 570, copied in the margin.[1] At the same hearing, petitioner offered in evidence a certificate of the Banking Commissioner of Texas, dated April 27, 1935, to which respondent objected, reading in material part as follows:

I, E. C. Brand, Banking Commissioner of Texas, do hereby certify that the Republic Bank & Trust Company, a state bank of deposit and discount, formerly doing business in Austin, Travis County, Texas, was closed by me on April 24, 1935, because it was in an insolvent and failing condition.

Stockholders of this institution are this day being assessed their full one hundred per cent liability for the benefit of its creditors.

During former years the officers of this bank charged its dormant deposits off of its depositors' liability ledger and credited surplus to cover a material amount. These deposits are now, and always have been, a true liability of this bank.

---

[1] Whenever and after any bank has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States, on account of such bank, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall so appear to him, is authorized to remit so much of said tax against insolvent State and savings banks as shall be found to affect the claims of their depositors.

Its known financial condition is that assets sufficient to pay its depositors in full do not exist when and if this bank is required to pay any Federal taxes.

In a memorandum opinion filed herein June 26, 1936, we held that the above quoted certificate of the Banking Commissioner of Texas was not admissible in evidence to prove the facts therein stated, when objected to by respondent, saying:

In the first place, evidence is not admissible to prove an issue which has not been raised by the pleadings. In the next place, a mere certificate by the Banking Commissioner of Texas that "its known financial condition is that assets sufficient to pay its depositors in full do not exist when and if this bank is required to pay any Federal taxes" is not admissible proof of the facts stated therein. Rule 29 of the Board's Rules of Practice provides in part: "Statements in the petition, ex parte affidavits, and briefs, do not constitute evidence."

The Banking Commissioner's certificate, printed above, in so far as it affects the issue here involved, is an ex parte statement. If the only question we had to determine was whether petitioner had been declared insolvent and its affairs placed in the hands of the Banking Commissioner of Texas, this certificate of the Banking Commissioner would be sufficient for that purpose. But when it comes to establishing the facts which are necessary to bring petitioner's case within the provisions of the Act of March 1, 1879, and thus absolve it from the deficiency which the Commissioner has determined, we think that more than the ex parte certificate of the Banking Commissioner is necessary, especially when its admission in evidence is objected to by respondent's counsel.

To admit such a certificate as evidence of the facts therein stated would prevent respondent's exercise of the right of cross-examination to test out the correctness of the conclusions therein stated. * * * We sustain respondent's objection to the admission of the certificate for that purpose. Cf. *Guaranty State Bank of Greenville, Texas*, 12 B. T. A. 543.

We adhere to the views expressed above.

Pursuant to leave granted in an order entered June 26, 1936, petitioner filed an amended petition on March 22, 1937, all the material allegations of which were denied by respondent, raising the issue of the applicability of the Act of March 1, 1879, *supra*, but at the subsequent hearing held at Houston, Texas, on April 19, 1937, petitioner did not again offer in evidence the certificate of the banking commissioner, hereinabove referred to, in connection with the issue so raised, and failed to offer any evidence on such issue. While we have jurisdiction to consider the issue, *West Town State Bank*, 32 B. T. A. 531, its decision depends entirely upon the existence or nonexistence of certain facts, in respect of which petitioner has the burden of proof. Petitioner having offered no proof on the issue raised by the amended pleadings, we find for the respondent thereon.

This brings us to the consideration of the issue presented by the original pleadings, namely, whether petitioner during the taxable year derived income in the amount of $20,000, from unproven claims.

In 1927 petitioner purchased from the receiver of the State National Bank all of that bank's assets, and as part consideration therefor, agreed to assume and pay 86 percent of any of its unknown liabilities which might thereafter be proved and accepted or established against the receivership. Upon termination of the receivership, the funds in the hands of the Comptroller of the Currency, relating to the unproven claims, were deposited with petitioner, to be used by it to pay 86 percent of any unproven claims which might be filed prior to the expiration of the statutory period of limitation of the State of Texas, which was said to be four years from the date of such deposit. To secure payment by petitioner to creditors upon proof of their claims within the time fixed by the Texas statute of limitations, petitioner agreed to and did deposit with the Treasurer of the United States, instead of the bond originally provided, bonds of the United States having a fair market value of $21,600. During the taxable year ended April 30, 1932, four years from the date of the deposit having elapsed, the Comptroller of the Currency released all of his rights in the bonds mentioned, and returned them to petitioner. Upon receipt of the bonds, petitioner, with the consent and approval of the Banking Commissioner of Texas, transferred $20,000 of such amount of $21,600, to its surplus account.

Petitioner entered the purchased assets on its books at a cost to it of the entire amount paid, plus the full amount of $21,600 placed with the Comptroller of the Currency. Prior to the taxable year all of such assets were converted through sale or otherwise, and petitioner's net income was determined for tax purposes on the basis of the book cost or value.

Respondent contends that upon expiration of the four-year period of limitation petitioner's contractual liability in respect of the unproven claims was extinguished. Therefore, on return of the bonds by the Comptroller of the Currency, respondent says, they became petitioner's property unconditionally, and it therefore derived taxable income in the amount of the $20,000 transferred to its surplus account.

Petitioner argues that under Texas law limitation does not apply to the unproven claims of the depositors; that it has a continuing liability in that respect, and points to the provisions of the contract of February 15, 1928, whereby petitioner remained conditionally liable after expiration of the four-year period of limitation. Petitioner contends, therefore, that it derived no taxable income upon return of the bonds by the Comptroller of the Currency.

The point argued by the parties respecting the Texas statute of limitation, we need not decide. If the bonds, upon return to petitioner, became its property absolutely, without further liability on

the part of petitioner as to unproven claims of the depositors, as contended by respondent, then petitioner does not deny that it received taxable income in the amount determined by respondent. If the bonds were not unconditionally returned to petitioner without further liability on its part, as it contends, we think, on the facts disclosed, petitioner nevertheless derived taxable income in an amount equal at least to the amount in controversy.

There is an abundance of evidence to establish that petitioner received the bonds back from the Comptroller of the Currency during the taxable year under a claim of right and without restriction as to their disposition, notwithstanding it might thereafter have been required to pay out, on claims of depositors subsequently established, an amount equal to the value of the bonds in whole or in part. The agreement between petitioner and the Comptroller of the Currency indicated that after expiration of the four-year period of limitation, petitioner "asserted an adverse claim to all of the assets" of the State National Bank "as against the holders of any and all unproven claims and liabilities against said Bank." That petitioner claimed the bonds upon their return as its own property unconditionally is further indicated by the transfer of $20,000 thereof to the credit of its surplus account.

In these circumstances, petitioner derived taxable income in the amount stated, and if in a later year it was or should yet be required to pay the equivalent of any part of such amount in satisfaction of claims subsequently proven, it would be entitled to deduct such amount from the income of the year in which paid. This principle was clearly established by the decision of the Supreme Court in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, where it was held that income earned in 1916, but impounded by a receiver pending outcome of litigation and actually paid over to taxpayer in 1917, was taxable as income of 1917. In its opinion the Court said:

The net profits earned by the property in 1916 were not income of the year 1922—the year in which the litigation with the government was finally terminated. They became income of the company in 1917, when it first became entitled to them and when it actually received them. If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * If in 1922 the government had prevailed, and the company had been obliged to refund the profits received in 1917, it would have been entitled to a deduction from the profits of 1922, not from those of any earlier year.

Respondent's determination is approved.

*Judgment will be entered for the respondent.*