HOWARD W. OETTING AND MARTHA D. OETTING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RICHARD T. AND JUANITA L. MITCHELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Oetting v. Commissioner
Docket Nos. 12120-79, 12125-79.
United States Tax Court
T.C. Memo 1982-268; 1982 Tax Ct. Memo LEXIS 478; 43 T.C.M. (CCH) 1373; T.C.M. (RIA) 82268; May 17, 1982. Howard W. Oetting and Martha D. Oetting, pro sese. Richard T. Mitchell and Juanita L. Mitchell, pro sese. Michael L. Boman, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in the petitioners' 1975 Federal income tax: Petitioners
Deficiency
Richard T. and Juanita Mitchell
$ 6,302.13
Howard W. and Martha D. Oetting
5,245.84
By order dated November 17, 1980, these cases were consolidated for purposes of trial, briefing, and opinion. The *479 case was submitted and all required briefs were filed by April 3, 1981. On December 1, 1981, however, petitioners Oetting filed a petition in bankruptcy in the United States Bankruptcy Court for the District of Kansas. Pursuant to 11 U.S.C. section 362(a)(8), the filing operated as a stay of the instant proceeding. By order dated March 15, 1982, the Bankruptcy Court modified the stay by authorizing us to continue the proceeding. The issues before us are (1) Evidentiary: Whether certain hearsay affidavits are admissible in evidence; and (2) Substantive: Whether petitioners have shown by a preponderance of the evidence that a debt owed to a partnership of which they were members was created or acquired in connection with a trade or business of the partnership or that the loss from its worthlessness was incurred in such trade or business. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Richard T. and Juanita L. Mitchell are husband and wife and resided in Overland Park, Kansas, at the time their petition *480 in this case was filed. They filed a joint Federal income tax return for their taxable year 1975 with the Internal Revenue Service Center, Austin, Texas. Petitioners Howard W. and Martha D. Oetting are husband and wife and resided at Leawood, Kansas, at the time they filed their petition herein. They filed a joint Federal income tax return for their taxable year 1975 with the Internal Revenue Service Center, Austin, Texas. On May 22, 1979, the Commissioner mailed to both sets of petitioners timely statutory notices determining the deficiencies before us. In April 1975, a partnership entitled "Mutual Equities, Ltd.," was formed by Howard W. Oetting, Richard T. Mitchell, Dee Bradley, and Don Maddux. There was no written partnership agreement. On May 2, 1975, Mutual Equities, Ltd. (ME) entered into an agreement with Baker Corporation whereby ME was to lend $ 50,000 to Baker Corporation. The agreement contained the following provisions: (1) ME was to purchase from Baker a $ 50,000 "Convertible Capital Note," to bear interest at the rate of 10 percent per annum. The note was to be convertible at the option of ME into 51 percent of Baker's capital stock. (2) Baker was *481 given the option to repurchase the note within 90 days of its November 30 fiscal year end for the principal and interest due plus 51 percent of the increase in the stockholders' equity of Baker occurring after April 30, 1975. The option was exercisable only after November 30, 1976. (3) ME agreed to arrange a $ 300,000 line of credit for Baker within 30 days; and (4) ME was to appoint a General Manager to coordinate Baker's Sales, Production, and Accounting departments. Howard W. Oetting wrote a check for $ 50,000 to Baker on behalf of ME. Baker subsequently issued a $ 50,000 note to ME. During 1975, $ 54,000 in additional funds was advanced to Baker on behalf of ME. Of the funds which were advanced to Baker Corporation, $ 103,000 [1] was treated as a business bad debt loss by ME for the taxable year 1975. Howard W. Oetting and Richard T. Mitchell each deducted as ordinary loss his distributive share of ME's claimed loss. ME made no investments in or loans to any business other than Baker. There was no commitment on the part of any partner of ME to participate in *482 any transactions other than the Baker loan. Other than a small amount retained for expenses, the advances to Baker depleted the capital of ME. ME maintained no journals or ledgers that would reflect a trade or business of lending money and did not have its own place of business. It received correspondence at the address of Capital Equities, Inc. The Commissioner disallowed all of the above-described losses claimed by petitioners on the grounds that the loan to Baker was a nonbusiness bad debt and was hence deductible only as a short-term capital loss, and that petitioners had already deducted other capital losses to the extent of the $ 1,000 limitation of section 1211(b). [2]
OPINION Issue 1: Admissibility of Hearsay Affidavits
Petitioners chose not to appear at trial and enlighten us with live testimony. Instead, they have submitted in evidence affidavits made by each of the four partners in ME. The affidavits are identical except with respect to the signing partner and the date of execution. Two were executed April 24, 1978, and the other two the following *483 day. The affidavits state the following: To Whom It May Concern: During the spring of 1975, notably during the month of April, I attended a business meeting to discuss the formation of a partnership. Those in attendance at this meeting included the following: Mr. R. T. Mitchell Mr. Howard W. Oetting Mr. D. Bradley Mr. D. Maddux Mr. U. D. Speck Mr. D. Robbins Mr. D. Selders Mr. S. Mansker The meeting had been called to explain the organization of a partnership entitled "Mutual Equities, Ltd", to explain the purpose, nature and scope of the partnership and to solicit funds and partners from those in attendance. The purpose, nature and scope of the partnership was explained as being an organization formed for the purpose of loaning money to high risk customers in an effort to produce a higher return on investment than can normally be obtained through conventional banking circles. It is my understanding this was to be an ongoing business, that each member of the partnership would submit high risk loan applicants to the partnership and that any loans approved were to be unanimously approved by the partnership. Further, the partner introducing the loan applicant *484 would be the principal loan officer and would report to the partnership each month as to the status of his loan. The partners explained the need for such an organization, the risk involved, the potential for success and the mechanics of the business. /s/ [Signature of ME Partner] Petitioners have introduced these affidavits for the purpose of proving that the assertions contained therein are true. They are written assertions not made by the declarant (affiant) while testifying in court and are therefore "hearsay" within the meaning of Rule 801, Federal Rules of Evidence. Unless one of the hearsay exceptions of Rules 803 (availability of declarant immaterial) or 804 (declarant unavailable) applies, the affidavits are inadmissible. Rule 804 is inapplicable because petitioners have not shown that any of the affiants were unavailable to testify at trial. Rule 803 lists 23 specific exceptions, none of which are applicable here. Rule 803(24) provides: (24) Other exceptions.--A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines *485 that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. We are not satisfied that the affidavits are admissible under this general exception. First, they have no especial guarantees of trustworthiness that would set them apart from other hearsay. In fact, they were executed at a time when the affiants may well have had interest in the outcome of the controversy, i.e., after the audit of their 1975 returns had commenced. The usual hearsay dangers are present. As the affiants did not testify, their version of the facts and their credibility were not subject to cross-examination and impeachment. Further, this Court was not able to observe their demeanor while testifying, an important determinant of our evaluation of credibility. A second shortcoming of the affidavits vis-a-vis Rule 803(24) is that petitioners have not shown that they are more probative on the point for which they *486 are offered than any other evidence which they can procure through reasonable efforts. Petitioners have not shown that they could not have, through reasonable efforts, procurred either their own or the other affiants' live testimony. Such testimony would be far more probative than the affidavits for the reasons discussed above. We conclude that the affidavits are inadmissible, and have not considered them in making our findings of fact or arriving at our conclusions of law. Issue 2: Business Versus Nonbusiness Bad Debt
The substantive issue for our consideration is whether the advances from ME to Baker during 1975 constituted business or nonbusiness debts. Respondent apparently concedes that they became worthless during 1975; the statutory notice raises no issue as to proof of worthlessness. Section 166 provides as follows: SEC. 166. BAD DEBTS. (a) General Rule.-- (1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (d) Nonbusiness Debts.-- (1) General rule.--In the case of a taxpayer other than a corporation-- (A) subsections (a) and (c) shall not apply to any nonbusiness debt; *487 and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year. (2) Nonbusiness debt defined.--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than-- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. Petitioners' theory on brief is that ME was engaged in the trade or business of lending money to high-risk customers in an effort to produce a higher rate of return, and that it made the advances to Baker in connection with such trade or business. [3] Petitioners rely only upon the affidavits discussed under Issue 1, above, to establish the purpose for which ME was formed. They introduced many exhibits evidencing their ownership of stock in other corporations. They do not, however, request findings of fact or advance legal arguments based upon this evidence. Also, without further explanation (which petitioners *488 have chosen not to provide through testimony) it is unclear just what relevance the exhibits have.We accordingly decline to consider them. As noted above, the Federal Rules of Evidence preclude us from using the affidavits in our resolution of this issue. Thus, the record before us reveals only that ME made advances to Baker of $ 104,000 during 1975 which depleted its capital, and that it made no other advances to any corporation. Such behavior hardly rises to the level of a "trade or business." Our language in Sales v. Commissioner,37 T.C. 576, 580 (1961), is strikingly appropriate herein: Consequently, if the partnership is to have its deduction escape classification as a nonbusiness bad debt, the petitioners must prove that the debt and the loss from its worthlessness bore *489 a proximate relationship to a business in which the partnership was engaged at the time the debt was created or acquired. * * * The determination as to the business or nonbusiness character of the debt and the requisite proximate relationship of the debt to the business of the taxpayer involves a question of fact. * * * In the instant case the petitioners do not contend that the loan was proximately related to any preexisting business being conducted by the partnership and, even if they had, the evidence does not support such a claim. Rather, it is the petitioners' contention that the making of a single loan is sufficient in and of itself to establish a trade or business of lending money where the amount involved and the rate of return indicate a commercial venture for profit. This Court has held on numerous occasions that the right to deduct bad debts as business losses is applicable only to the exceptional situations where the taxpayer's activities in making loans have been regarded as so extensive and continuous as to elevate that activity to the status of a separate business. * * * We do not believe, in view of the factual matrix of this case, that the making of an isolated *490 loan of $ 120,000 is so extensive an activity as to justify a finding by this Court that the partnership was engaged in the business of lending money. Certainly, if such solitary loan had been made by an individual it would not qualify as a business debt; and no convincing reason has been suggested as to why it should take on a different character when made by a partnership. As was true in Sales, the partnership in the instant case (ME) in essence made only one loan (composed of several advances) and then ceased its lending activity.While we have no doubt that ME intended to profit from the loan transaction, the concept of a "trade or business * * * falls far short of reaching every income or profit-making activity." Whipple v. Commissioner,373 U.S. 193, 201 (1963).
Accordingly, we hold that the Baker loan was a nonbusiness debt and hence the loss from its worthlessness is a short-term capital loss. The determination of the Commissioner must be sustained. Decisions will be entered for the respondent.
Footnotes
1. The checks made out to Baker total $ 104,000 but only $ 103,000 was written off as a bad debt.↩
2. All references are, unless otherwise specified, to the Internal Revenue Code of 1954, as amended.↩
3. Petitioners appear to concede that the determination of the existence of a trade or business is to be made at the partnership (as opposed to partner) level. This is indeed the law. Brannen v. Commissioner, 78 T.C.     (Mar. 30, 1982); Madison Gas & Electric Co. v. Commissioner,72 T.C. 521, 564-565 (1979), affd. 633 F.2d 572↩ (7th Cir. 1980).