**ESTATE OF Arthur Chase SHAFER, deceased, Chase Shafer, co-executor, and Resor Shafer, co-executor, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 83–1646.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1984.

Decided Dec. 11, 1984.

---

David E. Gebhart, argued, Robert O. Klausmeyer, Frost & Jacobs, Cincinnati, Ohio, for petitioners-appellants.

Joel Gerber, Dan Henry Lee, Acting Chief Counsel, I.R.S., Glenn L. Archer, Michael L. Paup, Lead Counsel, William S. Estabrook, Raymond W. Hepper, argued, Tax Division, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before LIVELY and KENNEDY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

This appeal concerns the includability of the value of a parcel of property in the gross estate of Arthur C. Shafer (Arthur). The Commissioner of the Internal Revenue Service, contending that pursuant to I.R.C. § 2036(a) (1982) the value of the property should have been included in Arthur's gross estate, filed a notice of deficiency against the estate. The decedent's two sons, Arthur Chase Shafer (Chase) and Robert Resor Shafer (Resor), in their capacity as co-executors of their father's estate, petitioned the United States Tax Court for a redetermination of the deficiency. The co-executors argued that the property was not includable because Arthur had not paid for the lot and because no "transfer" within the meaning of Section 2036(a) had occurred. The Tax Court, relying upon affidavits executed by Chase and Resor

and a letter from Chase to an Internal Revenue agent, concluded that Arthur had paid for the property and that there had been a "transfer" for federal estate tax purposes; consequently, the Tax Court upheld the Commissioner's notice of deficiency. Chase and Resor, asserting that the court admitted improperly into evidence the two affidavits and letter and erred in defining "transfer" for purposes of Section 2036(a), appeal from the Tax Court's determination. We conclude that the challenged documents were admitted properly into evidence and that the Tax Court, 80 T.C. 1145, interpreted correctly Section 2036(a). Accordingly, we affirm.

On June 8, 1939, Charles Whidden and Leslie Flanders conveyed by deed Lot No. 436 to Arthur C. Shafer and his wife, Eunice Shafer, for life with a remainder in Chase and Resor as tenants in common. The deed stated that the consideration had been paid by "Eunice C.R. Shafer, Arthur C. Shafer, and Arthur Chase Shafer and Robert Resor Shafer." On July 30, 1973, Eunice Shafer predeceased Arthur, Chase and Resor were appointed as co-executors of their mother's estate. The question arose at this time as to whether Lot No. 436 was includable in Eunice's gross estate. Because an Internal Revenue agent was unable to determine who paid for the lot, he requested Chase and Resor to execute affidavits concerning this matter.[1] In compliance, Chase, who was an attorney, drew up affidavits which both he and Resor executed. Resor, in the pertinent portion of his affidavit, stated, "To the best of my memory, in all conversations with my father, he stated that he was the sole purchaser of [Lot No. 436] and the houses thereon." Similarly, in his affidavit, Chase stated, "Throughout my life both my mother and father referred to [Lot No. 436] as 'belonging' to my father.... My father always said that he had bought and paid for [Lot No. 436], and I never heard my mother contradict him when he said so."

Based upon these affidavits, the Internal Revenue agent determined that the property was not includable in Eunice's gross estate.

Within one year of Eunice's death, Arthur died. Chase and Resor, again named as co-executors, failed to include the value of Lot No. 436 in their father's gross estate. In response to an inquiry by an Internal Revenue agent as to why the lot had not been included in Arthur's gross estate, Chase, in a letter dated September 15, 1976, indicated that he did not believe that Arthur had made a "transfer" within the meaning of Section 2036(a). Within this letter, however, Chase noted parenthetically, "It will amuse you to know that [Arthur] bought Lot 437 for $600, put up a small camp on it, only to find that he had put the camp on Lot 436, which he then bought for $1,200." Based upon this statement and the affidavits executed in regard to Eunice's estate, the Commissioner filed a notice of deficiency against Arthur's estate contending that under Section 2036(a) the value of the property was includable in Arthur's gross estate. The Tax Court upheld the notice of deficiency.

■ The standard for reviewing decisions of the Tax Court is well settled. While the Tax Court's findings of fact can be disturbed only if they are clearly erroneous, *e.g.*, *Commissioner v. Duberstein*, 363 U.S. 278, 290–91, 80 S.Ct. 1190, 1199–1200, 4 L.Ed.2d 1218 (1960); *Ohio Teamsters Educational & Safety Training Trust Fund v. Commissioner*, 692 F.2d 432, 435 (6th Cir.1982), questions of law are subject to *de novo* review, *e.g.*, *Commissioner v. McWilliams*, 158 F.2d 637 (6th Cir.1946), *aff'd*, 331 U.S. 694, 67 S.Ct. 1477, 91 L.Ed. 1750 (1947). An abuse of discretion standard applies generally to the Tax Court's interpretation and application of its own procedural rules, *e.g.*, *Commissioner v. Estate of Long*, 304 F.2d 136, 144 (9th Cir.1962); *Commissioner v. Erie Forge Co.*, 167 F.2d

---

**1.** Appellants have contended throughout these proceedings that the Internal Revenue agent acted fraudulently in obtaining the affidavits. The Tax Court, however, stated explicitly that it was "at a loss" to understand what fraud the agent allegedly perpetrated. There is no evidence in the record that contradicts the Tax Court's factual finding.

71, 76 (3rd Cir.1948), and to the Tax Court's application of the Federal Rules of Evidence, *see, e.g.,* I.R.C. § 7482(a) (1982); *United States v. Stone,* 702 F.2d 1333, 1339–40 (11th Cir.1983); *United States v. Medel,* 592 F.2d 1305, 1314 (5th Cir.1979); *United States v. Jenkins,* 525 F.2d 819, 824 (6th Cir.1975) (per curiam).

Since the Tax Court allowed the statements in the two affidavits and letter to be introduced both for impeachment purposes and as substantive evidence, we must, as an initial matter, determine if they were admitted properly.[2] Generally, statements such as those in the affidavits and letter would be inadmissible as hearsay. *See* Fed.R.Evid. 801(c). Certain statements made by parties, however, fall outside of the hearsay definition if the statements are offered against a party and the statements are made in the party's individual or representative capacity.[3] Fed.R.Evid. 801(a) & 801(d)(2)(A). We first consider whether the Chase letter of September 15, 1976 meets these two requirements.

■ Initially, in order for the letter to be admissible, Chase must be a "party" to this action. An executor of an estate was considered a "party" to the action under the restrictive common law rule of representative admissions.[4] *E.g.,* IV J. Wigmore, Evidence in Trials at Common Law §§ 1069 & 1076 (1972). Since the purpose of Rule 801(d)(2)(A) is to increase the admissibility of representative admissions, *see* Fed.R. Evid. 801(d)(2) advisory committee note ("calls for generous treatment of this avenue to admissibility"), *a fortiori* an executor must be a "party" within the Rule. *Accord* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(A)[01] (1984) (admission requires the statement be made by a "party or his representative" (footnote omitted)). Accordingly, since Chase is a co-executor of Arthur's estate, he is a party for purposes of Rule 801(d)(2)(A).[5]

■ Having determined that Chase is a "party" to this action, the next inquiry concerns the extent to which Rule 801(d)(2)(A) has expanded upon the admissibility of representative admissions. The history of the rule is relevant to this question. Rule 801(d)(2)(A) was meant to overturn the prior law which permitted admissions by a representative to be introduced only if the statements were made in the representative capacity.[6] In contrast, the plain language of Rule 801(d)(2)(A) encompasses statements made in "either [the executor's] individual *or* a representative capacity." Fed.R.Evid. 801(d)(2)(A) (emphasis added). *See also* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(A)[01] (1984). Thus, whether Chase was acting in his capacity as executor of his father's estate or in his individual capacity when he executed the letter is irrelevant; in either case, the letter is admissible under Rule 801(d)(2)(A) as a party-admission. The Tax Court, therefore, held properly that the letter was an admission within Rule 801(d)(2)(A).

**2.** The Federal Rules of Evidence apply to proceedings before the Tax Court. I.R.C. § 7453 (1982).

**3.** In order to be an admission within rule 801(d)(2)(A), the statements do not have to be adverse to the party's interests when made. *E.g., United States v. Shulman,* 624 F.2d 384, 390 (2d Cir.1980); *United States v. Rois Ruiz,* 579 F.2d 670, 676 (1st Cir.1978).

**4.** Although an executor was a party under the common law, only admissions made in such capacity were admissible against the estate. *See infra* note 6.

**5.** Since Resor is also a co-executor, this reasoning applies equally to him.

**6.** *Compare* IV J. Wigmore, Evidence in Trials at Common Law § 1076 (1972) ("Where the party sues in a *representative* capacity—i.e., at trustee, executor, administrator, or the like—the representative is distinct from the ordinary capacity, and only admissions made in the former quality are receivable; ... statements made before or after incumbency are inadmissible." (emphasis in original) (footnote omitted)) *with* Fed.R.Evid. 801(d)(2)(A) advisory committee note ("If he has a representative capacity and the statement is offered against him in that capacity, no inquiry whether he was acting in the representative capacity in making the statement is required.").

■ Since the affidavits contain not only direct statements by Chase and Resor, but also statements attributed by Chase and Resor to Arthur, they present an additional hearsay problem. In order to be admissible, both levels of statements within the affidavits must be excluded from the hearsay definition. Fed.R.Evid. 805; *Shell v. Parrish*, 448 F.2d 528, 533–34 (6th Cir. 1971). As previously discussed, the direct statements made by Chase and Resor are party-admissions. In our view, the statements attributed by Chase and Resor to Arthur are also party-admissions within Rule 801(d)(2)(A). Since Arthur, through his estate, is a party to this action, his statements are a "classic example of an admission." Fed.R.Evid. 801(d)(2)(A) advisory committee note. *See IV* J. Wigmore, Evidence in Trials at Common Law § 1081 (1972) ("No modern court doubts that a *decedent,* whose rights are transmitted intact to his successor, is a person whose admissions are receivable against a party claiming the decedent's rights as *heir, executor,* or *administrator.*" (footnote omitted) (emphasis in the original)); *accord Foster v. Commissioner*, 80 T.C. 34, 120 n. 43 (1983). Thus, the Tax Court held correctly that the affidavits were admissible under the Federal Rules of Evidence.

One further impediment exists as to the admissibility of the affidavits. Tax Court Rule of Practice and Procedure 143(b), I.R.C. app. Rule 143(b) (as amended March 1, 1983), provides, "Ex parte affidavits, statements in briefs, and unadmitted allegations in pleadings do not constitute evidence."[7] The Tax Court, in interpreting Rule 143(b) and its predecessor, Rule 31(f), has held consistently that ex parte affidavits are inadmissible. *See Ruplinger v. Commissioner*, 47 T.C.M. (CCH) 1430, 1433 n. 5 (1984); *Horchem v. Commissioner*, 40 T.C.M. (CCH) 491, 492 (1980); *Perkins v. Commissioner*, 40 T.C. 330, 340 (1963); *In Re Bonta Narragansett Realty Corp.*, 1 B.T.A. 208, 209–10 (1924). The reason for this exclusion is that the affiants are usually unavailable to testify and hence the affidavits cannot be refuted. *See Oetting v. Commissioner*, 43 T.C.M. (CCH) 1373, 1376 (1982); *Estate of Temple v. Commissioner*, 67 T.C. 143, 160 (1976); *Republic Bank & Trust Co. v. Commissioner*, 36 B.T.A. 680, 685 (1937); *In Re The Dailey News Publishing Co.*, 4 B.T.A. 31, 35 (1926). Therefore, if the two affidavits are deemed to be "ex parte" within the meaning of Rule 143(b), they would be inadmissible as evidence. In the present case, both Chase and Resor were present and testified at the hearing; they both had an ample opportunity to refute or explain their statements in the affidavits. Further, since the statements attributed to Arthur are party-admissions, we consider them to be inherently trustworthy. *See* Fed.R.Evid. 801(d)(2) advisory committee note. Thus, none of the traditional hearsay concerns accompanied the introduction of the affidavits into evidence. The Tax Court reasoned that Rule 143(b) should not be construed to preclude the introduction of affidavits when the rationale for such exclusion is inapplicable. We do not believe that the Tax Court abused its discretion in interpreting Rule 143(b) in this manner.

■ After determining that the letter and affidavits were admissible, the Tax Court, noting that the evidence pertaining to this issue is both "scant and ambiguous," considered the question of who paid for Lot No. 436. Although the deed to the property purports that Arthur, Eunice, Chase, and Resor each partially paid for the land, the letter and affidavits indicate that Arthur alone paid the entire consideration for the property. Confronted with this conflicting evidence, the Tax Court reasoned that Arthur paid the entire consideration for the property. This conclusion is a finding of fact and we are unable to hold that it is clearly erroneous. *E.g., Jacobs v. Commissioner*, 698 F.2d 850, 852 (6th Cir. 1983) (per curiam). The finding that Arthur alone paid for the lot permitted the

---

7. The Tax Court has the authority to promulgate rules of practice and procedure to govern proceedings before it. I.R.C. § 7453 (1982).

Tax Court to consider whether Arthur had made a "transfer" within the meaning of I.R.C. § 2036(a) (1982).

Section 2036(a) provides that "[t]he value of the gross estate shall include the value of all property ... the decedent .... transfer[s] ... under which he has retained for his life ... the possession ... of ... the property."[8] Therefore, in order to have a transaction within § 2036(a), there must be a transfer. *E.g. National City Bank of Cleveland v. United States*, 371 F.2d 13, 15–16 (6th Cir.1966). Although the type of transaction which occurred in this case is not uncommon, this is the first opportunity for this Court to consider its estate tax consequences.

The Supreme Court has addressed previously the meaning of the term "transfer" for estate tax purposes and has held repeatedly that it is not to be interpreted restrictively. For example, in interpreting the predecessor statute to Section 2036, the Court, in *Helvering v. Hallock*, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940), concluded that "the statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property." *Id.* at 112, 60 S.Ct. at 448. Further, the Court in *Hallock* warned that the imposition of property law concepts "into the administration of the estate tax, precludes a fair and workable tax system." *Id.* at 118, 60 S.Ct. at 450. Similarly, in interpreting an analogous statute to Section 2036(a), Section 401 of the Revenue Act of 1921, the Court stated, "Obviously, the word 'transfer' ... cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee." *Chase National Bank v. United States*, 278 U.S. 327, 337, 49 S.Ct. 126, 128, 73 L.Ed. 405 (1929). *Ac-*

*cord United States v. Manufacturers National Bank of Detroit*, 363 U.S. 194, 199, 80 S.Ct. 1103, 1106, 4 L.Ed.2d 1158 (1960).

Consistent with this Supreme Court precedent, we believe that the substance of the transaction should govern over the form. *See Detroit Bank & Trust Company v. United States*, 467 F.2d 964, 966 (6th Cir.1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); *Glaser v. United States*, 306 F.2d 57, 61 (7th Cir. 1962). In the present case, Arthur failed to make a transfer as defined by ordinary property law concepts. Arthur did not receive Lot No. 463 in fee and then, while retaining a life estate, transfer a remainder interest in the property to Chase and Resor. Rather, accepting the Tax Court's factual findings, Arthur had the grantors execute the deed so as to convey a remainder interest to Chase and Resor as tenants in common while retaining a life estate for himself and Eunice. In form, therefore, only one transfer occurred: Whidden and Flanders conveyed a life estate to Arthur and Eunice with a remainder to Chase and Arthur as tenants in common. In substance, however, Arthur achieved in one step what might ordinarily take two. The effect of the transaction in the present case is merely to eliminate the intermediate step of Arthur receiving the land in fee; Arthur still retained the possession and enjoyment of the property while conveying a remainder interest to Chase and Resor. We believe that this constitutes a "transfer" under Section 2036(a); the inclusion or circumvention of the intermediate step should not make a difference in the estate tax consequences of the transaction.[9]

Our conclusion is consistent with the fact that the term "transfer" should be interpreted to effectuate the purpose of Section 2036(a). *See, e.g., Foster v. United States*,

---

**8.** Neither party disputes that Arthur had a life estate.

**9.** *National City Bank of Cleveland v. United States*, 371 F.2d 13 (1966) is not contrary to this result. In *National City Bank*, this court held that a taxpayer must take some "affirmative action" for there to be a transfer within the meaning of Section 2036. *Id.* at 16. In the

present case, Arthur not only paid for Lot No. 436, but also had Whidden and Flanders make out the deed to his specifications. In contrast, the taxpayer in *National City Bank* took no "affirmative action whatsoever." *Id.* We conclude, therefore, that *National City Bank* is consistent with our determination in this case.

**1222**

303 U.S. 118, 120, 58 S.Ct. 424, 425, 82 L.Ed. 700 (1938). The general purpose of Section 2036(a) is to include in a decedent's gross estate "transfers which leave the transferor a significant interest in or control over the property transferred." *United States v. Estate of Grace*, 395 U.S. 316, 320, 89 S.Ct. 1730, 1733, 23 L.Ed.2d 332 (1969). Further, the Section was enacted to prevent the circumvention of the federal estate tax law by various *inter vivos* schemes. *E.g., Estate of Wyly v. Commissioner*, 610 F.2d 1282, 1290 (5th Cir.1980); *Union Planters National Bank v. United States*, 361 F.2d 662, 666 (6th Cir.1966). If the type of transaction which occurred in this case fell outside of Section 2036(a), a buyer of land could avoid having the land included in his or her gross estate simply by directing the grantor make out the deed in a particular manner. Such a result would permit the technicalities and diversities of property law to thwart the purposes of federal estate tax law. *See Goldstone v. United States*, 325 U.S. 687, 691, 65 S.Ct. 1323, 1325, 89 L.Ed. 1871 (1945).

The includability of Lot No. 436 in Arthur C. Shafer's gross estate has presented this court with several evidentiary issues as well as a statutory interpretation question. As to the evidentiary issues, we conclude that the Tax Court did not abuse its discretion in interpreting its own Rule of Practice and Procedure 143(b) and Fed.R. Evid. 801(d)(2)(A) in a manner which permitted the two affidavits and letter to be admitted into evidence. Also, we conclude that the Tax Court interpreted properly the term "transfer" in Section 2036(a).

The decision of the Tax Court is, accordingly, affirmed.