EXPANDED OPINION; . FINDINGS OF FACT AND CONCLUSIONS OF LAW, SUPPORTING BRIEF OPINION FILED JUNE 21, 1985; CONFERENCE CALL SET
RICE, District Judge.
In this case, the Plaintiff, Daniel J. Ma-honey, Jr., the executor of the estate of the decedent, James M. Cox, Jr., seeks a refund of federal estate taxes and deficiency interest paid by the estate, as well as interest on the amount paid. The dispute arises out of a decision by the Defendant that a portion of the value of a certain trust, created by the decedent’s father, was includable in the estate of James M. Cox, Jr., by virtue of § 2036(a) of the Internal Revenue Code of 1954. The Plaintiff paid both the tax assessed by the Defendant and the deficiency interest, and then initiated this action for a refund of said payment. Pursuant to the agreement of the parties, this Court ordered this case bifurcated. See Doc. # 25. As a result, at the trial of this case, the Court heard evidence relating only to the includability of any portion of the trust in the estate of James M. Cox, Jr.
In this Court’s brief Opinion of June 21, 1985 (Doc. # 55), this Court stated as follows:
As a starting point of analysis, the Court has concluded that the transfer of 750 shares of Atlanta Journal Company common stock by Governor Cox to the trust he created for the benefit of his son, James M. Cox, Jr., was in part a sale (11+ percent) and in part a gift (88 + percent). This case deals only with the 11+ percent that has been deemed a sale. This conclusion raised two major questions for the Court:
1. Was the sale of stock to the trust, or was it to the decedent, James M. Cox, Jr.? For reasons that will be set forth in the expanded opinion to follow, the Court has found that the decedent, James M. Cox, Jr., furnished consideration for the transfer of the stock and, therefore, has concluded that the sale was to him rather than to the trust.
2. Did James M. Cox, Jr. purchase an undivided or full ownership interest in 11+ percent of the 750 transferred shares, or did he purchase only a life estate in the transferred stock? Once again, for reasons which will be set forth in the expanded opinion, the Court has concluded that James M. Cox, Jr. purchased a life estate only.
Therefore, based on the foregoing conclusions, the Court has determined that the decedent did not transfer to the trust that property in which he retained a life estate (the 11+ percent of the 750 shares of Atlanta Journal Company common stock), and, therefore § 2036 of the Internal Revenue Code does not require the inclusion of that portion of the trust in the estate of James M. Cox, Jr. Moreover, in the Court's opinion, the princi *275 pies of estoppel relied upon by Defendant do not require the inclusion of said portion of the trust in decedent’s estate. Accordingly, assuming there exist no further issues to be resolved prior to judgment1, the Court, following the telephone conference between Court and counsel, will enter judgment for Plaintiff and against Defendant in the amount of Seven Million, Nine Hundred Forty-two Thousand, Three Hundred Forty-two and 94/100 Dollars ($7,942,342.94) plus interest as provided by 28 U.S.C. § 2411 and 26 U.S.C. § 6621.
The Court now sets forth its findings of fact and its conclusions of law.
I. Findings of Fact
(1) In December, 1939, James Middleton Cox, Sr. (“Governor Cox”), the former Governor of Ohio and in 1920 the nominee of the Democratic Party for President of the United States, and two corporations controlled by him, The Evening News Publishing Company and Springfield Newspapers, Inc., purchased all of the outstanding stock of the Atlanta Journal Company. At the time of the purchase, the Atlanta Journal Company published a newspaper, The Atlanta Herald, and operated Radio Station WSB in Atlanta.
(2) After purchasing the stock of the Atlanta Journal Company, Governor Cox and his co-purchasers recapitalized the company. As a result, the two corporate, co-purchasers and another corporation, affiliated with Governor Cox, received 4',950 shares of preferred stock. After a stock split, Governor Cox received all 4,000 shares of Atlanta Journal Company common stock. Governor Cox’s cost basis in these shares was $6.2225 per share.
(3) In 1941, Governor Cox created five trusts, each of which named an income beneficiary and remaindermen. The income beneficiaries of the five trusts were Margaretta Blair Cox, wife of Governor Cox; James M. Cox, Jr., Barbara Cox Anthony[1] and Anne Cox Chambers,[2] Governor Cox’s three children; and Daniel J. Mahoney,[3] former son-in-law of Governor Cox. James M. Cox, Jr., was appointed trustee of the trusts created for the benefit of Margaretta Blair Cox, his step-mother and those created for the benefit of his half-sisters, Anne Cox Chambers and Barbara Cox Anthony. Robert K. Landis, Governor Cox’s attorney, was appointed trustee of the trust created for the benefit of James Cox, Jr. Daniel J. Mahoney was named trustee of the trust created for his benefit and that of his children. It is the trust created for the benefit of James M. Cox, Jr. (“the James M. Cox, Jr. Trust”), which is at the center of this controversy.
(4) Governor Cox was the sole creator of these five trusts. He consulted only with his attorney, Robert K. Landis, before creating them. He alone decided who would be the remaindermen for each trust. He did not consult with the members of his family in making this decision or any other decision relating to the trusts.
(5) Governor Cox transferred 3,000 of the 4,000 shares of the Atlanta Journal common to the five trusts. The stock certificates evidencing the transferred shares of stock were issued in the following manner:
STOCK CERTIFICATE NUMBER OF SHARES TRANSFEREE
600 James M. Cox, Jr., Trustee for Margaretta Blair Cox
675 James M. Cox, Jr., Trustee for Anne Cox Chambers
675 James M. Cox, Jr., Trustee for Barbara Cox Anthony
750 Robert K. Landis, Trustee for James M. Cox, Jr.
300 Daniel J. Mahoney, Trustee for the Mahoney Family
*276 No stock certificates were issued to the income beneficiaries.
(6) Governor Cox considered his transfer of stock a sale for the fair market value of the stock, rather than a gift. Consequently, Governor Cox did not file a gift tax return for the transaction. Moreover, he did not report a capital gain for the sale. Rather, the amount that Governor Cox received from the sale, $6.2225 per share, was equal to Governor Cox’s adjusted basis for the stock. Thus, there was no gain from the sale.
(7) In 1943, Governor Cox created another trust (“the Dayton Trust”) for the benefit of his wife, his children and the family of his former son-in-law, to which he gave his shares of stock in The Evening News Publishing Company. Governor Cox considered this transaction a gift, and as a result, he filed a gift tax return for 1943. During the audit of this gift tax return, the Internal Revenue Service (“IRS”) discovered the creation and funding of the 1941 trusts and insisted that Governor Cox file a gift tax return for 1941.
(8) On September 23, 1946, Governor Cox filed a gift tax return at the insistence of the IRS, in which he showed the creation and funding of the 1941 trusts; however, Governor Cox disclaimed any gift tax liability. Governor Cox asserted that he had sold the shares of stock to the trusts rather than making a gift of same. Moreover, he contended that the sale was for fair market value.
(9) When the IRS audited this gift tax return, it concluded that the fair market value of the stock at the time of transfer was between $200 and $300 per share rather than $6.2225 per share as Governor Cox had contended. Accordingly, the IRS assessed Governor Cox for gift taxes. Subsequently, Governor Cox challenged the IRS assessment by petitioning the Tax Court. While the case was pending in the Tax Court, the parties reached a compromise in their dispute, whereby they agreed that the fair market value of the stock was $55 per share. Therefore, on November 24, 1952, Governor Cox filed an amended gift tax return, reporting the fair market value of the 3,000 shares of Atlanta Journal common which he transferred to the five trusts in 1941 at $55 per share. Therefore, Governor Cox paid the gift tax on a net gift of $146,332.50, which was arrived at by subtracting the amount Governor Cox received for the stock, $6,2225 per share, from its fair market value of the stock, $55 per share, and then multiplying the result by the number of shares involved. Governor Cox did not claim a per donee exclusion.[4]
(10) The trust that Governor Cox created for the benefit of his son, James M. Cox, Jr. (“James M. Cox, Jr., Trust”) provided that:
In consideration of $1.00 and other valuable consideration paid to the grantor by the Trustee and by James M. Cox, Jr., the grantor has sold and does hereby assign and transfer to Robert K. Landes, as Trustee for James M. Cox, Jr., hereunder, 750 shares of common stock of The Atlanta Journal Company.
(11) At the time that Governor Cox transferred the stock to the James M. Cox, Jr., Trust, James M. Cox, Jr., executed a note in the amount of $4,666.88, payable to his father as consideration for the funding of the trust. The amount of the note was fixed by multiplying the number of shares of Atlanta Journal Company common stock transferred to the James M. Cox, Jr., Trust, 750, by the sale price, $6.2225 per share. Additionally, the note bore an interest rate of 4% per annum.
(12) At the time he executed the note in 1941, James Cox, Jr., was thirty-eight years of age and had sufficient assets to have paid the debt evidenced by the note immediately.
(13) A provision of the James M. Cox, Jr., Trust directed the Trustee, after pay *277 ing reasonable expenses, to apply all cash dividends and other cash distributions received on the stock, to the payment of principal and interest “on the note of James M. Cox, Jr., this day executed and delivered to the grantor in payment for the stock which is the subject matter of this trust, until the note is discharged.”[5]
(14) The indebtedness evidenced by the note, as well as the interest upon it, were discharged by withholding dividends, which would have been paid to the trust from the Atlanta Journal Company. Nonetheless, James Cox, Jr., treated these amounts as constructively received by him. He reported as income, on his income tax returns for the relevant years, the amounts of dividends so withheld. In addition, he claimed, as deductions, that portion of the withheld dividends that went to pay the interest on the note.
(15) In 1941, the James M. Cox, Jr., Trust’s share of the dividends declared by the Atlanta Journal Company was $4,500. In the years 1942 through 1944, the Trust’s share of dividends was $7,500 annually. The note and interest thereon were paid off in these years.
(16) In the Cox family hierarchy, Governor Cox was the “boss.” He did not consult with his son about the establishment of the James M. Cox, Jr., Trust or any of the other trusts which Governor Cox created in 1941. Throughout his life, James M. Cox, Jr., expressed dissatisfaction at the fact that his father put the Atlanta Journal Company common stock in trust -rather than giving it to him outright.
(17) The 1941 transfer by which Governor Cox funded the James M. Cox, Jr., Trust was a partial gift (88+ percent of the value of the stock) and a partial sale (11+ percent of the value of the stock). Governor Cox sold to his son, James M. Cox, Jr., only the right to receive for his life the income generated by the trust. The remainder of the transfer was a gift. James M. Cox, Jr., received nothing more than the right to receive income from the trust. He did not receive an undivided or full ownership interest in the transferred shares. James M. Cox, Jr., transferred nothing to the trust.
II. Discussion
In an action such as the present one where a taxpayer seeks a refund of federal taxes, the burden of persuasion is imposed upon the taxpayer to establish by a preponderance of the evidence that there was an overpayment of taxes. Sinder v. United States, 655 F.2d 729 (6th Cir.1981). With this standard of proof in mind, the Court turns to the discussion of the issues herein.
In this case, the Court is called upon to decide whether a portion of the value of James M. Cox, Jr., Trust must be included in the estate of James M. Cox, Jr. The Government argues that § 2036(a)(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 2036(a)(1) requires the inclusion of a portion of that trust in the estate. Section 2036(a)(1) provides:
(a) General Rule. — The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money’s worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
(1) the possession or enjoyment of, or the right to the income from, the property, or
*278 In Estate of Wyly v. Commissioner, 610 F.2d 1282 (5th Cir.1980), the Fifth Circuit explained the purpose of § 2036(a)(1):
The purpose of this provision is to prevent circumvention of federal estate tax by use of inter vivos schemes which do not significantly alter lifetime beneficial enjoyment of property supposedly transferred by a decedent. See 74 Cong.Rec. 7078-79, 7198-99 (1931); H.R.Rep. No. 708, 72nd Cong., 1939-1 C.B. (Part 2) 457, 490-91; S.Rep. No. 665, 72nd Cong., 1939-1 C.B. (Part 2) 496, 532. The Supreme Court has recognized this purpose on several occasions. In United States v. O’Malley, 383 U.S. 627, 631, 86 S.Ct. 1123, 1126, 16 L.Ed.2d 145 (1966), it was stated that the section shows the intent of Congress to subject “to tax all property which has been the subject of an incomplete inter vivos transfer.” In United States v. Estate of Grace, 395 U.S. 316, 320, 89 S.Ct. 1730, 1733, 23 L.Ed.2d 332 (1969), the Court noted:
The general purpose of the statute was to include in a decedent’s gross estate transfers that are essentially testamentary — i.e., transfers which leave the transferor a significant interest in or a control over the property transferred during his lifetime.
In accord with that authority, this Court has stated:
[§ 2036 is] part of a Congressional scheme to tax the value of property transferred at death, whether the decedent accomplishes the transfer by will, by intestacy, or by allowing his substantial control over the property to remain unexercised until death so that the shifting of its economic benefits to the beneficiary only then becomes complete. In Re Estate of Lumpkin, 474 F.2d 1092, 1097 (5th Cir.1973).
The classic case of the intended application of the Act would be a purported gift with a retained life estate in the donor.
610 F.2d at 1290-91.
There are three basic elements in § 2036(a)(1) which, if met, would require the inclusion of a portion of the James M. Cox, Jr., Trust in the estate of James M. Cox, Jr.: (1) there must be an inter vivos transfer by decedent (James M. Cox, Jr.), in trust or otherwise, other than a bone fide sale for full and adequate consideration in money or money’s worth; (2) decedent (James M. Cox, Jr.) must have retained the possession, enjoyment or right to income from the property; (3) this reservation must have been for the life of James M. Cox, Jr., for a period that is not ascertainable without reference to his death or for any period which does not in fact end before his death. 3 Mertens, Law of Federal Gift and Estate Taxation, § 24.07.
Herein, the parties do not disagree on the second and third elements. There is no question that James M. Cox, Jr., “retained” the right to income from the James M. Cox, Jr., Trust. Moreover, there is no question that James M. Cox, Jr.’s, right to receive the income was for his life. Thus, the only question for the Court is whether the funding of the trust in question involved a transfer of property by James M. Cox, Jr., to the James M. Cox, Jr., Trust.
As a starting point for the Court’s resolution of this question, the Court accepts the Government’s assertion that Governor Cox funded the James Cox Trust through a partial sale and a partial gift. Indeed, the Court has reached this conclusion as a matter of fact. (See # 17, supra). The transfer by Governor Cox of 750 shares of Atlanta Journal Company common stock to the James Cox Trust was in part a sale (11+ percent of the value of the stock) and in part a gift (88+ percent of the value of the stock). Plaintiff does not seriously question this proposition; however, to the extent that Plaintiff argues to the contrary, the Court rejects same. The evidence overwhelmingly supports the Defendant’s proposition. Indeed, this is how everyone treated the transaction during Governor Cox’s gift tax return dispute. This conclusion raises two major questions for the Court:
(1) Was the sale of the 11+ percent of the stock to the James M. Cox, Jr., Trust, or was it to James M. Cox, Jr.?
*279 (2) Did James M. Cox, Jr., purchase an undivided or full ownership interest in 11+ percent of the 750 transferred shares, or did he purchase only an equitable life estate in the transferred stock?
These questions arise because of the parties’ disparate views of the underlying transaction which is the genesis of this lawsuit, the funding of the James M. Cox, Jr., Trust. As stated above, Defendant views this underlying transaction as having been accomplished through a partial sale and a partial gift. Defendant contends that Governor Cox sold slightly in excess of 11 percent of the 750 shares of the Atlanta Journal Company common stock to his son,[6] following which, the Defendant argues, James M. Cox, Jr., made a gift to the James M. Cox, Jr., Trust of the 11 + percent of the stock that he had purchased. Therefore, the argument concludes, James M. Cox, Jr., transferred an interest in property to the trust, within the meaning of § 2036(a), and a portion (that percentage of the initial transfer that was a sale (11 + percent))[7] of the trust must be included in his estate.[8]
Plaintiff, on the other hand, argues that if there was a sale of stock, it was to the James M. Cox, Jr., Trust rather than to the decedent, James M. Cox, Jr. Under this theory, Plaintiff argues that James M. Cox, Jr., never owned any of the 750 shares of stock, and, as a consequence, could not have transferred an interest in that property to the trust. In the alternative, Plaintiff contends that if there was a sale to the decedent of 11+ percent of the value of the 750 shares of stock transferred to the trust, James M. Cox, Jr., purchased nothing more than the right to receive income from the trust over the direction of his lifetime, rather than an undivided or full ownership interest in the 11+ percent of the transferred shares. Under this theory, as with Plaintiff’s alternative theory, the decedent could not have transferred any property to the trust since all he had received for his consideration was the right to receive income from the shares so transferred throughout his lifetime.
For reasons that follow, and based upon the Court’s findings of fact, this Court concludes that the sale that occurred in 1941 was to James M. Cox, Jr., and not to the James M. Cox, Jr., Trust. However, the Court concludes that James M. Cox, Jr., received nothing more from his father than the right to receive the income generated by the trust, and the stock transferred thereto, for his life. James M. Cox, Jr., did not purchase an undivided or full ownership interest in 11+ percent of the 750 shares of Atlanta Journal Company common stock which he then transferred to the trust by gift. Rather, he purchased an equitable life estate in the transferred shares. As a consequence, the Court concludes that James M. Cox, Jr., did not transfer an interest in property to the trust and that § 2036(a) does not require the inclusion of a portion (11 + percent) of the value of the James M. Cox, Jr., Trust in his estate.
The Plaintiff contends that the 1941 sale was to the trust rather than to James M. Cox, Jr., because the trust was primarily responsible for furnishing consideration in exchange for the transferred stock. Plaintiff would have the Court conclude that the decedent acted as merely a surety to guar *280 antee the debt to Governor Cox, which the trust had incurred in exchange for the transfer of the stock. The trust agreement itself recites that the consideration was paid to the grantor, Governor Cox, by the trustee and James M. Cox, Jr., See Jt. Ex. I. Moreover, the trust agreement provided that dividends received by the trust would initially be used to retire the note that James M. Cox, Jr., had executed and delivered to the grantor. See, id. Additionally, Plaintiff points to the fact that the note that the decedent signed, or a copy thereof, is not available. Hence, it is not possible to determine whether the decedent signed the note as a maker, evidencing his own personal debt, or as a surety, guaranteeing the trust’s debt.
If this were the only evidence before this Court, a plausible inference to be drawn would be that the trust furnished the consideration for the sale of the stock and the decedent was merely a guarantor of its debt. Nonetheless, an equally plausible inference is that the decedent furnished the consideration and that the provision requiring that dividends initially be paid to retire the decedent’s note was placed in the trust to guarantee the debt incurred by the decedent. Under those circumstances, the Court would be compelled to conclude that the Plaintiff had not met his burden of proving by a preponderance of the evidence that there was an overpayment of taxes and that he is entitled to a refund.
However, that is not all of the evidence. There is strong circumstantial evidence, in the form of letters to and from the decedent (Defendant’s Exs. D, E and F) and from the fiduciary tax returns for the trust (Defendant’s Exs. J, K and L) which supports the Court’s finding of fact that the decedent reported all dividends that went to pay the principal and interest of the note as income and that he took a deduction for the interest that was paid. Simply stated, the decedent treated the amounts that were retained to discharge his indebtedness as constructively received by him. Under these circumstances, the Court concludes that James M. Cox, Jr., rather than the trust, furnished the consideration for that part of the transfer of 750 shares of Atlanta Journal common stock which was a sale.
This conclusion leads to the second question posited by the Court: Did James M. Cox, Jr., purchase an undivided or full ownership interest of 11+ percent of the transferred stock or did he purchase merely the right to receive income from the trust? Implicit in the Defendant’s theory of the case is the assertion that James M. Cox, Jr., purchased an undivided or full ownership interest of 11+ percent of the stock of which he made a gift to the trust, which would, therefore, be includable in his estate. To the contrary, Plaintiff argues that James M. Cox, Jr., purchased only an equitable life estate in the trust, the right to receive income from it, and that, therefore, that portion of the trust need not have been included in his estate.
In this Court’s opinion, the Defendant’s position ignores the reality of the creation and funding of the James Cox Trust. The reality is that the creation and funding of the trust was the act of Governor Cox, not his son. An examination of the language of the trust agreement leads, among other things, to this conclusion. The agreement provided that the grantor, Governor Cox, transferred 750 shares of Atlanta Journal Company common stock to the trustee who was to hold legal title to same and all incidents of ownership thereto. The stock was transferred directly to the trust; no stock certificates were issued to the decedent.[9] Furthermore, Governor Cox was “the boss.” He dominated his family and the conduct of his business affairs. If not domineering, he was at least the dominating figure in the lives of his family. Governor Cox consulted only with his attorney *281 when he established the James M. Cox, Jr., Trust and the other four trusts in 1941. He did not consult with the decedent or with other members of his family before creating the trusts. The remaindermen of the James Cox Trust were chosen by Governor Cox without input from the decedent. The remaindermen of the James Cox trust are the same as those of the trust created in 1943, the Dayton Trust. Finally, it must be remembered that the property that funded the trust was that of Governor Cox, and the decedent had no legal claim to it.
In short, Governor Cox created the James Cox Trust; he funded it; and named the remaindermen. All that James M. Cox, Jr., received in exchange for the consideration he furnished was the right to receive income for his life. He did not receive an undivided or full ownership interest in the 11+ percent of the stock in question. James M. Cox did not transfer an interest in property to the trust because he had not received anything other than the right to receive income for his lifetime. Accordingly, the Court concludes that James M. Cox, Jr., did not transfer property to the trust, as that term is used in § 2036(a).
In reaching this conclusion, the Court has not applied the term “transfer” in a restrictive manner, nor has it violated the Supreme Court’s directive that § 2036 “taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property.” Helvering v. Hallock, 309 U.S. 106, 112, 60 S.Ct. 444, 448, 84 L.Ed. 604 (1940). Nonetheless, where ownership of an interest in property is never acquired, it cannot be transferred. See, e.g., 2 Mertens, supra, at §§ 20.11-20.12. Herein, the Court has held that the decedent acquired nothing more than an equitable life estate; therefore, he had nothing to transfer.
Additionally, the present dispute is distinguishable from those decisions in which courts have held that a person who furnishes consideration in exchange for the creation of a trust by another makes a transfer within the meaning of § 2036(a). See, e.g., Estate of Dora Marshall, 51 T.C. 696 (1969).[10] In this case, this Court has concluded that James M. Cox, Jr., furnished consideration only for right to receive income from the trust, not for the creation of the trust itself.
Similarly, Estate of Shafer v. Commissioner, 749 F.2d 1216 (6th Cir.1984), is not contrary to the conclusion reached herein. In Estate of Shafer, the decedent was found to have furnished the entire consideration for a lot. The lot was transferred by deed for life to the decedent and his wife with the remainder to the decedent’s children. The Sixth Circuit concluded that the decedent had made a § 2036 transfer even though he did not make a transfer as that term is defined by property law concepts. The Sixth Circuit accepted the Tax Court’s finding that the decedent directed the grantors of the lot to execute the deed so as to convey the remainder interest to his children. Therefore, an application of the familiar rule that the substance of a transaction shall control its form led to the conclusion that there had been an § 2036(a) transfer. Herein, the decedent had no role in the creation of the James M. Cox, Jr., Trust. He did not tell his father how the trust should be set up or who should be its beneficiaries. He merely furnished a note in the amount of $4,666.88 in exchange for the right to receive income from the trust for his life. If this Court had found that the decedent furnished consideration for *282 funding the entire trust, or that portion of the trust which represents 11+ percent of its value, the Court would conclude that a portion of the trust would have been includable in the estate of James M. Cox, Jr.
The Defendant also raises an estoppel argument, the parameters of which are set out below. The doctrine of equitable estoppel applies in tax cases when “[t]he taxpayer, by his conduct which includes language, acts or silence knowingly makes a representation or conceals material facts which he intends or expects will be acted upon by taxing officials in determining his tax.” Robinson v. Commissioner, 100 F.2d 847, 849 (6th Cir.1939). Moreover, the facts which the taxpayer represents or conceals by his conduct to the taxing officials must be either unknown to those officials or such that the taxing officials do not have the same access to the facts as the taxpayer. Id. Furthermore, the facts so represented or concealed must have caused the loss of taxes to the government. Id.
Specifically, Defendant argues that Plaintiff is estopped from arguing that the 1941 transaction, by which the James M. Cox, Jr., Trust was funded, was a gift from Governor Cox to the trust rather than a bone fide sale to his son, the decedent. See Doc. # 37 at 17-18. In deciding this case, the Court has found that there was a sale of 11+ percent of the value of the 750 shares of Atlanta Journal Company common stock to the decedent, James M. Cox, Jr. The Defendant does not argue that Plaintiff is estopped from arguing that James M. Cox, Jr., purchased the right to receive income generated by the James M. Cox, Jr., Trust from his father. The Defendant has presented the Court with no reason why the question of whether James M. Cox, Jr., purchased an undivided or full ownership interest in 11+ percent of the 750 shares of stock that were transferred to the trust, rather than the right to receive the income generated by the trust, was relevant to the gift tax controversy between Governor Cox and the IRS. In other words, even assuming, arguendo, that the decedent concealed from the IRS the fact that he purchased nothing more than the right to receive income generated by the trust, there is absolutely no indication that the decedent intended or expected the IRS to act upon his concealment or that the IRS did in fact act upon same. Under these circumstances, the Court concludes that Plaintiff is not estopped from arguing that James M. Cox, Jr., purchased nothing more than the right to receive income generated by the James M. Cox, Jr., Trust.
III. Conclusions of Law
(1) This Court has jurisdiction over the subject matter of this dispute under 28 U.S.C. § 1346(a)(1).
(2) The decedent James M. Cox, Jr., furnished consideration in the form of a note for $4,666.88 with an annual interest rate of 4 percent, to Governor Cox in exchange for the right to receive for life the income generated by the James M. Cox, Jr., Trust.
(3) James M. Cox, Jr., did not make a transfer, as that term is used in § 2036(a) of the 1954 Internal Revenue Code, of an interest of property.
(4) In the absence of the transfer of an interest in property, § 2036(a) does not require the inclusion of the value of that property in a gross estate.
(5) Plaintiff has met his burden of proving by the preponderance of the evidence that he overpaid the estate taxes for the estate of James M. Cox, Jr.
(6) Plaintiff is entitled to a refund of $7,942,342.94[11] of which $6,250,009.01 is tax, and the balance deficiency interest, together with interest on the amount paid, as provided by 28 U.S.C. § 2411 and 26 U.S.C. § 6621.
IV. Further Procedures
(1) Counsel for the Plaintiff will have ten (10) calendar days following receipt of this Opinion, etc., within which to propose addi *283 tional findings of fact and/or conclusions of law or to suggest any deletions of same from this opinion, etc. Counsel for Defendant shall have five (5) calendar days, after receipt of such suggested additions or deletions, in which to object to same.
(2) In its Opinion of June 21, 1985 (Doc. # 55), as well as in the Opinion herein, this Court has referred to the bifurcation order entered on February 5, 1982. The Court is convinced that there are no further issues to resolve, notwithstanding the bifurcation order. Nonetheless, the Court has scheduled a telephone conference call at 4:30 p.m. on Wednesday, August 28, 1985, for the sole purpose of eliciting the opinions of counsel regarding any outstanding issues. Assuming no such issues remain, the Court will thereafter enter final judgment in conformity with its Findings of Fact and Conclusions of Law, to wit: in favor of the Plaintiff, and against the Defendant herein, in the amount of $7,942,342.94, plus interest at the prevailing rate authorized by law (28 U.S.C. § 2411 and 26 U.S.C. § 6621).

. At the time of the creation of the trust, Barbara Cox Anthony's legal name was Barbara Cox.

. At the time of the creation of the trust, Anne Cox Chambers' legal name was Anne Cox Johnson.

. Daniel J. Mahoney was the father of the present Plaintiff, Daniel J. Mahoney, Jr.

. The amount paid, $6.2225 per share is 11.3136 percent of the total value of the stock, $55 per share.

. In its entirety, the relevant portion of the trust agreement provided:
All cash dividends and other cash distributions received on said stock, less any costs and expenses which may be properly incurred by the Trustee in the discharge of his duties as Trustee, shall be applied by the Trustee to the payment of interest or principal (or both) on the note of James M. Cox, Jr., this day executed and delivered to the the grantor in payment for the stock which is the subject matter of this trust, until the note is discharged.

. The remaining 88+ percent of the transferred stock is treated as a gift by Governor Cox to the James M. Cox, Jr., Trust and is not a subject of this litigation.

. In the deficiency notice that it issued, the IRS asserted that $5,520,296.00 of the James M. Cox, Jr., Trust was includable in the estate of James M. Cox, Jr. The IRS arrived at this figure by excluding from the value of the trust at the time of Cox's death that portion of the trust which was attributable to the distribution from the Margaretta Cox Trust. The resulting figure was multiplied by 11.3136 percent, which is the percentage of the intial funding of the trust which was a "sale” rather than a "gift."

. Alternatively, Defendant argues that the Plaintiff is estopped to deny that James J. Cox, Jr., transferred 11+ percent of the 750 shares of Atlanta Journal Company common stock to the trust. The Court will discuss the Defendant's estoppel argument after its discussion of the two questions set forth above.

. This is not to suggest that a two-step transaction, with the issuance of stock certificates to the decedent which he, in turn, issued to the trust, is necessary before there is a transfer within the meaning of § 2036(a). Estate of Shafer v. Commission, 749 F.2d 1216 (6th Cir.1984), precludes such a suggestion. Rather, this is merely further evidence to the Court that Governor Cox, rather than the decedent was the sole creator of the trust.

. In Estate of Dora Marshall, the court concluded that there was a § 2036(a) transfer because the nominal settlor created the trust in exchange for the decedent relinquishing a debt owed to her by the settlor. 51 T.C. at 701. The court therein pointed out that this was the type of transfer that § 2036 was intended to reach because the decedent's estate was depleted by the amount of the debt that was relinquished. Id. at 702. In this case, two factors distinguish the present case from Estate of Dora Marshall. Therein, the decedent relinquished a debt in exchange for the creation of the trust; whereas, herein, the Court has concluded that the decedent furnished consideration, the note, for the right to receive income rather than furnishing consideration of the creation of the trust. Moreover, the transaction herein did not diminish James M. Cox’s estate. On the contrary, it greatly enhanced it.

. This amount was arrived at by adding the amount of the estate tax assessed, $6,250,009.01, to the deficiency interest, $1,692,333.92. See Uncontroverted Fact # 19, Doc. # 41 at 6.