JACOB W. HELLER and ESTHER R. HELLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heller v. Commissioner
Docket No. 34961-83.
United States Tax Court
T.C. Memo 1987-376; 1987 Tax Ct. Memo LEXIS 376; 53 T.C.M. (CCH) 1486; T.C.M. (RIA) 87376; July 29, 1987. Edward L. Skolnik and Ira Kleiman, for the petitioners. Roland Barral, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1977
$ 12,203
1978
19,761
1979
15,295
Prior to trial, the parties in this case executed closing agreements which resolved most of the issues raised in the notice of deficiency. After a concession by respondent, the sole issue remaining for our consideration is whether petitioner Jacob W. Heller received unreported ordinary income and capital gain income in the amounts of $ 13,291 and $ 244, respectively, during taxable year 1979. FINDINGS OF FACT
*378 Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto have been incorporated herein by this reference. At the time the petition in this case was filed, petitioners Jacob W. Heller and Esther R. Heller, husband and wife, resided in Woodmere, New York. Esther R. Heller is a petitioner in this case solely by reason of having filed a joint return with her husband; accordingly, Jacob W. Heller will hereinafter be referred to as petitioner. Petitioner was a senior partner in the law firm of Weiss, Rosenthal, Heller and Schwartzman (WRH&S) from January 1, 1969 through December 31, 1978. WRH&S, which had 13 partners, had no written partnership agreement. Annual profit of WRH&S were allocated by oral agreement of the three senior partners. On December 31, 1978, WRH&S was dissolved by oral agreement of the partners and petitioner and another partner, Richarrd F. Horowitz, formed a new law firm called Heller, Horowitz and Feit. The remaining partners continued the practice of law under the firm name of Weiss, Rosenthal and Schwartzman (hereinafter referred to as the WR&S partnership). Pursuant to the oral dissolution *379 agreement, petitioner received the sum of $ 15,000. Each partner also agreed to the division of the physical assets of WRH&S consisting of furniture, fixtures and the library and the retention of each partner's respective clients and corresponding accounts receivable existing on December 31, 1978. Although petitioner was never a member of the WR&S partnership, after WHR&S was dissolved on December 31, 1978, he shared office space with his former colleagues for approximately 18 months. He possessed a key to the bookkeeping office during that period. During taxable year 1979, petitioner did not receive any income from fees generated by clients of the WR&S partnership. On or about October 9, 1980, petitioner received a Form K-1, Partner's Share of Income, Credits, Deductions, Etc. (Form K-1), which indicated that petitioner's capital account at the beginning of the WR&S partnership's 1979 taxable year was $ 6,919 and was zero at the close of the WR&S partnership year. The Form K-1 also indicated that the WR&S partnership made a $ 28,902 distribution to petitioner in 1979 and reported that petitioner had ordinary income from the WR&S partnership in the amount $ 13,291. The Form *380 K-1 also reported that petitioner had capital gains income from the WR&S partnership in the amount of $ 8,692 for the taxable year in issue. After receiving the original Form K-1, petitioner promptly notified members of the WR&S partnership, both verbally and in writing, that he considered the Form K-1 to be incorrect. Petitioner thereafter was informed by a spokesman for the WR&S partnership that the $ 13,291 of ordinary income was a deemed distribution to him resulting from the WR&S partnership having paid, during 1979, a previously existing bank indebtedness for which petitioner was allegedly proportionately responsible. [1] Petitioner did not report in income the $ 13,291 for taxable year 1979, but did report $ 8,081 as a section 1231 [2] capital gain distribution resulting from his withdrawal from WHR&S. In his joint income tax return for taxable year 1979, filed October 15, 1980, petitioner included an explanation setting forth his position as to the errors contained on the Form K-1. *381 In December, 1984, petitioner brought an action for an accounting under New York state law in order to resolve various disputes relating to his withdrawal from WRH&S. On September 5, 1985, five days prior to trial in the instant proceeding, petitioner and his former partners settled their dispute and the members of the WR&S partnership acknowledged that the original Form K-1 was incorrect. The WR&S partnership issued an amended Form K-1 for the taxable year 1979 to petitioner and to the Internal Revenue Service. [3] The amended Form K-1 issued to petitioner showed a distribution to petitioner in the amount of $ 15,000, capital gains in the amount of $ 8,081 and no ordinary income attributable to petitioner for that year. The amended Form K-1 reported petitioner's opening and year and capital account balances in the same amounts as the original Form K-1. *382 OPINION Respondent maintains that petitioner received unreported income from the WR&S partnership and argues that petitioner has failed to meet his burden of proof because petitioner, despite being given numerous opportunities to do so, failed to produce any of the WR&S partnership books and records or call any of his former partners to testify on his behalf. Petitioner, on the other hand, vigorously asserts that the $ 15,000 cash payment he received in 1979 represents the return of his capital account ($ 6,919) and his share of gain ($ 8,081) from the disposition of nondivisible capital assets of WRH&S pursuant to the dissolution agreement. This issue in this case is purely factual. As the trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we will or will not believe. Christensen v. Commissioner,786 F.2d 1382, 1383-1384 (9th Cir. 1986), affg. and remanding T.C. Memo. 1984-197 (on another issue). See Diaz v. Commissioner,58 T.C. 560, 562 (1972). We are not bound to accept uncontradicted testimony if it is found to be improbable, unreasonable, *383 or the likely product of self-interest. Demkowicz v. Commissioner,551 F.2d 929, 931 (3d Cir. 1977); Wood v. Commissioner,338 F.2d 602, 605 (9th Cir. 1964), affd. 41 T.C. 593 (1964). As to the determined deficiency, petitioner bears the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Petitioner here is forced to prove that he did not receive certain alleged income, and, as noted by the Supreme Court in Elkins v. United States,364 U.S. 206, 218 (1960), "as a practical matter it is never easy to prove a negative." Throughout his testimony, petitioner repeatedly emphasized that he was never a member of the WR&S partnership, never received income from that partnership and that upon his dissolution of WRH&S there was never any provision for his receipt of income from the WR&S partnership. Despite respondent's arguments to the contrary, petitioner was a forthright and candid witness and his testimony in this case was consistent, reasonable, and not inherently improbable. Moreover, the evidence of record corroborates petitioner's *384 testimony. Respondent has presented no evidence which would contradict petitioner's testimony. We find that petitioner's testimony, together with the evidence of record, is sufficiently credible to satisfy us that he did not receive income from the WR&S partnership in 1979. [4] Accordingly, we conclude that petitioner has sustained his burden of proof. Respondent contended throughout this proceeding that petitioner had *385 access to the WR&S partnership books and records during the year in issue and that despite his issuance of subpoenas for documentation respecting the records of the WR&S partnership for taxable year 1979, petitioner failed to provide them. However, petitioner succinctly pointed out at trial that although he had a key to the bookkeeping office, he did not have an absolute right to the WR&S partnership's books and records for 1979 because he was not a member of the firm. See N.Y. Partnership Law sec. 41 (McKinney 1948). Petitioner also emphasized that while he had examined books and records of WRH&S for taxable year 1978 and found them to be correct, he did not examine the WR&S partnership books and records for 1979. In fact, it would have been an act of impropriety for him to do so. Respondent also argues that petitioner's position is inconsistent with the Form K-1 issued by the WR&S partnership. Respondent asserts that although petitioner disputed the income attributable to him on the Form K-1, a subsequent dispute among partners regarding a partnership distribution, even where it leads to litigation in which it is determined that a distribution will not *386 be made, should not affect the tax liability of the individual partner. In reliance thereon, respondent cites Maletis v. United States,200 F.2d 97 (9th Cir. 1952), cert. denied 345 U.S. 924 (1953); Beck Chemical Equipment Corp. v. Commissioner,27 T.C. 840 (1957); and Faesy v. Commissioner,1 B.T.A. 350 (1925). In Beck Chemical and Faesy, the respective taxpayers were entitled to their distributive share of partnership profits, but had not received their distributions because litigation between members of the respective partnerships precluded the taxpayers from receiving any distributions during the taxable years in issue. This Court concluded in both cases that disputes between partners does not relieve them from reporting as income their proportionate shares of the net profit in the year it is earned. In contrast, the situation in Maletis involved a taxpayer who claimed a refund based on the carry back of net operating losses. The district court, in denying the claim for refund, held that the loss suffered was not the taxpayer's own net operating loss, but was the loss of an equally participating *387 partnership consisting of the taxpayer and his two sons. The taxpayer appealed, contending that the partnership was invalid for income tax purposes. The Ninth Circuit affirmed the judgment of the district court and held that a taxpayer who sets up a partnership valid under state law, conducts business as a partnership, and files partnership returns cannot repudiate the partnership in order to obtain tax advantages for himself on the ground that the partnership was fictional. The record herein reflects that petitioner was never a partner in the WR&S partnership during 1979 or any other year, that he never claimed that he was and that he had no entitlement to any ordinary income or any capital gains other than those capital gains which he reported and which resulted from WHR&S' agreement of dissolution as of December 31, 1978. The validity of the WR&S partnership itself is not in issue. We therefore conclude that the instant case is distinguishable from the cases cited by respondent because petitioner herein was not entitled to any distribution of WR&S partnership income at any time. On brief, respondent argues for the first time that petitioner realized a $ 15,000 capital *388 gain under section 731 on the cash distribution made to him by the partnership. In support of his argument, respondent alleges that petitioner, in addition to receiving $ 6,919 representing the balance of his capital account, also received an undetermined amount of physical assets during 1979, including office furniture, fixtures and library collections. Respondent further argues that petitioner did not present any evidence as to specifically what items were distributed to him, the value of such assets, or his basis in WRH&S. [5]
Petitioner objects to respondent's assertion of a new position on brief. We agree with petitioner. To raise this issue at this stage of litigation is improper because it violates the requirement of "fair notice of the matters in controversy." Rule 31(a). Respondent did not raise the issue in *389 his notice of deficiency, in his answer to the petition or at trial. This Court has stated on numerous occasions that respondent should not be afforded "carte blanche authority to assert additional bases for his disallowance of specific items at any time prior to the issuance of an opinion." Seligman v. Commissioner,84 T.C. 191, 198 (1985), affd. 796 F.2d 116 (5th Cir. 1986), and cases cited therein. Accordingly, this Court has routinely refused to consider issues first raised in the parties' briefs, particularly when surprise and prejudice are found to exist. In the instant proceeding we conclude that petitioner has been prejudiced by respondent's new argument because he did not have the opportunity to present specific evidence on the section 731 issue. Therefore, we will not consider respondent's alternative argument. As a final matter, petitioner requested on brief that he be awarded attorney's fees under section 7430. Section 7430 provides that this Court may award a taxpayer his reasonable litigation costs and attorney fees incurred in a Tax Court proceeding only if the taxpayer meets the requirements of that section. Briefly stated, section *390 7430 requires the taxpayer to demonstrate that he is the prevailing party and that he has exhausted the administrative remedies available within the Internal Revenue Service. Secs. 7430(c)(2) and (b)(2) (now section 7430(b)(1)). Only reasonable litigation costs and fees, as defined in section 7430(c)(1), may be awarded. However, in order for the Court to consider whether attorney's fees should be awarded in a proceeding, a taxpayer must first follow the procedures set forth in Rule 231. Because petitioner has not made his claim in accordance with Rule 231, his request for attorney's fees is premature and will not be considered at this time. To reflect the settlement agreement as well as the concession by respondent, Decision will be entered under Rule 155.
Footnotes
1. Copies of correspondence between petitioner and members of the WR&S partnership concerning the original Form K-1 were attached to the supplemental stipulation filed with this Court. At the time the supplemental stipulation was signed, respondent noted his objection to these letters on the grounds that they were hearsay. When petitioner identified these letters and referred to them during his testimony, respondent did not object. We do not find such correspondence to be hearsay because it was not offered to prove the truth of the claimed error in the Form K-1, but rather was used for the purpose of showing that petitioner questioned the accuracy of the Form K-1, his reasons for questioning it, and the explanation he received from the WR&S partnership. ↩
2. All section references refer to the Internal Revenue Code of 1954, as amended and in effect, for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Copies of the WR&S partnership's amended Form K-1 as well as a letter dated September 5, 1985, from the WR&S partnership to the District Director, Internal Revenue Service, Holtsville, New York, were attached to the stipulation filed in this case. A copy of the WRH&S financial statement for the year ending December 31, 1978, was attached to the supplemental stipulation as an exhibit. On each stipulation respondent stated that he objected to these documents on the grounds of relevancy. Respondent made no objections with respect to these documents during the course of the trial, but on brief refers to these documents as inadmissible evidence. Contrary to respondent's assertion, we find these documents to be relevant and germane to resolution of the issue raised in this proceeding. ↩
4. As reflected on the financial statements of December 31, 1978, WRH&S then carried $ 160,000 of bank indebtedness as a liability and that after deducting that liability petitioner's capital account balance was reduced to $ 6,919. The assets of WHR&S which were carried over to the WR&S partnership were more than adequate to repay the bank loan. Thus, while payments of such liability may have resulted in a deemed distribution to petitioner under section 752, that distribution would not result in any gain or loss to petitioner. Sec. 731. In any event it did not constitute income from the WR&S partnership to which petitioner was entitled and the WR&S partnership acknowledged that fact in the amended Form K-1 and accompanying letter to the District Director. ↩
5. We note that although the oral dissolution agreement of WHR&S provided for division of the physical assets, petitioner testified at trial that he did not receive any distribution of such assets during 1979 because the distribution of such assets was a part of the dispute between himself and his former partners which was not settled until September, 1985. ↩