19 F.3d 7
 73 A.F.T.R.2d 94-1383
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Rahmat A. NIAZMAND, M.D., Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 93-1398.
 United States Court of Appeals,
First Circuit.
 February 24, 1994
 
 Appeal from the United States Tax Court
 Rahmat A. Niazmand, M.D., on brief pro se.
 Michael l. Paup, Acting Assistant Attorney General, Gary R. Allen, Charles E. Brookhart and S. Robert Lyons, Attorneys, Tax Division, Department of Justice, on brief for appellee.
 U.S.T.C.
 AFFIRMED.
 Before Cyr, Boudin and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Rahmat A. Niazmand is appealing certain adverse rulings by the Tax Court, rendered in an opinion which had otherwise found in his favor (i.e., that he did not owe income taxes for certain tax years). We affirm.
 
 
 2
 In 1991, the Internal Revenue Service sent Niazmand a notice of deficiency stating that he owed income taxes and additions to tax for the years 1979-83 and 1985-86, which were years in which Niazmand had neither filed tax returns nor paid any income tax. Niazmand filed a petition in Tax Court, challenging the IRS's determination and claiming that the IRS owed him a refund since he had overpaid his income tax in 1978. He later amended his petition to seek refunds for previous years because of losses incurred in 1978 and 1979, which he sought to have carried back to years in which he had paid income taxes. Thereafter, Niazmand and the IRS entered into a stipulation that Niazmand did not owe any income tax for the years 1979-83 and 1985-86 as claimed in the deficiency notice. Niazmand, however, sought adjudication of two other issues: whether he was entitled to refunds for the 1975-78 tax years, and what the amount and nature was of a loss he had incurred in 1979. Evidence on those issues was presented at trial. In addition, with court approval, Niazmand introduced evidence to substantiate a claim he intended to make for litigation costs, although, under Tax Court Rule 231, Niazmand could not file a motion for litigation costs until after the court had served its written opinion. Soon after the trial, however, Niazmand filed a motion seeking permission to file a motion for litigation costs early, which the Tax Court denied the same day as it served its written opinion.
 
 
 3
 The Tax Court found that Niazmand owed no income tax or additions to tax for the years 1979-83 and 1985-86. It also found that it had no jurisdiction to determine whether Niazmand had made overpayments (and thus deserved refunds) for the taxable years 1975-78, since the IRS had not determined that there were any deficiencies in tax paid for those years. Concerning Niazmand's claims relating to the 1979 loss, the court essentially said that the only question properly before it was whether Niazmand owed the IRS any income tax for the years 1979-83 and 1985-86, as the IRS had originally claimed. Since Niazmand had not filed any returns or paid any taxes for those years, however, the question of overpayments by Niazmand for those years (which included 1979) did not arise. Moreover, since Niazmand did not owe any income tax for 1979, the court concluded that it had no need to decide whether Niazmand had suffered a loss in 1979 greater than the amount conceded by the IRS, i.e., the conceded amount sufficed to show that Niazmand owed no income tax for 1979. (In a footnote, the court said that it was "most unlikely" that Niazmand's alleged losses could qualify for ordinary loss treatment under 26 U.S.C. Sec. 1244.) Finally, the court concluded that it would be premature to decide whether to award Niazmand his litigation costs since Tax Court Rule 231 required a motion for litigation costs to be filed after service of the written opinion. In a footnote, the court indicated that Niazmand was unlikely to prevail on any such motion in any event.
 
 
 4
 On appeal, Niazmand argues that the Tax Court should have determined whether the IRS owed him a refund for pre-1979 tax years and what the precise amount of his loss for 1979 was, but he cites no supporting authority. Niazmand also says that the Tax Court ignored an alleged concession by the IRS at trial that Niazmand's litigation costs should be awarded to him, and that he had had to file his motion seeking leave to file an early motion for litigation costs because a family medical emergency required his departure from this country. For the following reasons, we find that his arguments are not persuasive.
 
 
 5
 First, it is well settled that the Tax Court has jurisdiction to determine a deficiency or overpayment only for tax years for which the IRS has sent the taxpayer a notice of deficiency, and that it may consider facts from other tax years only as necessary to correctly redetermine the taxpayer's liability for the years for which the notice of deficiency was sent. See Harris v. Commissioner, 29
 
 
 6
 T.C.M. (CCH) 1510, 1511 (1970), aff'd, 73-1 U.S.T.C. (CCH) p 9205 (9th Cir. 1972); Crawford v. Commissioner, 28 T.C.M. (CCH) 909, 910-11 (1969); see also 26 U.S.C. Sec. 6214(b) ("The Tax Court in redetermining a deficiency of income tax for any taxable year ... shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid."). Therefore, the Tax Court had no jurisdiction to determine that the IRS owed Niazmand a refund for pre-1979 years since the IRS had not determined that Niazmand's income tax was deficient in those years.
 
 
 7
 Second, if Niazmand had paid income tax in 1979, a year for which the IRS originally asserted a deficiency, then it might have been important to determine the exact amount of Niazmand's loss in that year in order to determine his taxable income and the extent of his alleged overpayment of taxes. But Niazmand did not pay income tax in 1979, and so he could not have overpaid his taxes in that year, and the Tax Court correctly found that it had no need to determine the precise amount of Niazmand's losses. Furthermore, the IRS had conceded that there was no deficiency in 1979, Niazmand had stipulated to the zero deficiency for that year, and the Tax Court had accepted the parties' stipulation. Accordingly, the Tax Court's determination that Niazmand owed no income tax vindicated Niazmand fully with respect to his tax position in 1979, and its determination would not have been further aided by fixing the precise amount of the 1979 operating loss. At trial, Niazmand suggested that calculating the operating loss was important because the amount of the loss could affect his tax treatment in future tax years. The court's refusal to do so under the circumstances was completely appropriate. Had the court fixed the amount of the operating loss, its determination would not have affected issues then before the court, but would essentially have been an "advisory opinion declarative of the deduction petitioner may be able to use in some future years." See LTV Corporation v. Commissioner of Internal Revenue, 64 T.C. 589, 593-96 (1975) (the Tax Court declined to determine the precise amount of an alleged operating loss in part because the IRS had conceded sufficient losses to offset any deficiencies in petitioner's income tax for the tax years before the court and the alleged operating loss would at most affect tax years not before the court). Niazmand remains free to raise the question of the amount of the 1979 operating loss in litigation concerning future tax years if necessary. See Chevron Corporation v. Commissioner, 98 T.C. 590, 592-93 (1992) (the Tax Court declined to reclassify petitioners' income where doing so would not affect the taxable years in question and the doctrines of res judicata and collateral estoppel would not bar petitioners from raising questions about the correct classification of the income in future litigation).[1]
 
 
 8
 Finally, the IRS agreed to permit Niazmand to testify at trial as to his alleged litigation costs only in order to establish a record on which he could base a later filed motion for litigation costs. The IRS did not say, as Niazmand now contends, that an award of costs to Niazmand should be made. Furthermore, at trial the court told Niazmand explicitly that Tax Court Rule 231 required motions for litigation costs to be filed only during the 30-day period beginning on the date the Tax Court's written opinion is served, and Niazmand indicated that he understood the requirements of the rule.
 
 
 9
 Niazmand has not shown that the Tax Court's denial of his motion to file a motion for costs in advance of the date the written opinion was served was an abuse of discretion. See, e.g., Estate of Shafer v. Commissioner, 749 F.2d 1216, 1218 (6th Cir. 1984) (holding that Tax Court's application of its procedural rules are reviewed for abuse of discretion). The Tax Court routinely requires taxpayers to conform to the time requirements of Rule 231. See, e.g., Groetzinger v. Commissioner, 87 T.C. 533, 548 (1986) (rejecting as premature a motion for litigation costs filed at the date of the evidentiary hearing); Heller v. Commissioner, 53 T.C.M. (CCH) 1486, 1490 (1987) (rejecting as premature a motion for litigation costs filed with petitioner's brief).
 
 
 10
 Affirmed.
 
 
 
 [1]
 On appeal, Niazmand claims that his pre-1980 losses would affect the amount of losses for the years 1980-83 and 1985-86, which were before the court. His contention is unavailing under the circumstances present here. Before trial, Niazmand entered into a stipulation with the government in which he agreed that he had negative taxable income for the years in question, in the specific amounts set out in the stipulation. He and the government submitted their stipulation as evidence to be considered by the court in arriving at its decision. Niazmand's contention on appeal amounts to an attempt to retract that stipulation, and so we reject it. For the same reason, we deny Niazmand's request to consider his 1986 tax return on appeal (which the clerk of this court treated as a letter motion to expand the record). The return was prepared and filed more than a year after the trial in this case, and shows a negative taxable income in an amount different than the amount originally stipulated to by Niazmand